# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| FARMERS AUTOMOBILE INSURANCE ASSOCIATION, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ST. PAUL MERCURY INSURANCE COMPANY, )<br>)<br>Defendant. ) | Case No. 05-1331 |

### ORDER

Before the Court is St. Paul Mercury Insurance Company's ("St. Paul") Motion for Summary Judgment on the Complaint and Counterclaim and Farmers Automobile Insurance Association's ("Farmers") Motion for Partial Summary Judgment. For the reasons set forth below, St. Paul's Motion [#12] is GRANTED and Farmers' Motion [#13] is DENIED.

### JURISDICTION

Plaintiff Farmers is an Illinois corporation with its principal place of business in Illinois. St. Paul is a Minnesota corporation with its principal place of business in Minnesota. The amount in controversy in this matter exceeds $75,000. Accordingly, jurisdiction is proper under 28 U.S.C. § 1332.

## BACKGROUND

This is a declaratory judgment action brought by Farmers against St. Paul. Farmers seeks a declaration from this Court that St. Paul has a duty to reimburse Farmers for defense expenses for loss attributable to a lawsuit brought against it in state court. St. Paul, on the other hand, contends that it has no duty to defend or indemnify Farmers. Specifically, this case arises out of a Directors & Officers Company Liability Policy that Farmers purchased from St. Paul, effective September 30, 2003, through September 30, 2004, (the "Policy"). In general, the Policy was meant to provide Farmers with coverage for losses incurred as a result of wrongful employment practices.

On October 23, 2003, Christopher Loesche, a former employee of Farmers, filed a lawsuit in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, seeking recovery for overtime wages that he claims he is owed from Farmers according to the Illinois Minimum Wage Law. Loesche later amended his complaint adding class claims against Farmers. Loesche alleges that, during his employment as a claims adjuster for Farmers, he was paid an hourly rate but was never paid for the hours he was required to work in excess of forty hours per week despite the fact that he was regularly required to do so. Loesche alleges that he is owed back wages in excess of $50,000. Loesche also alleges a cause of action for unjust enrichment claiming that Farmers was unjustly enriched when it received the benefit of his overtime labor and services without paying for them and therefore he is entitled to equitable reimbursement for his services.

Pursuant to the Policy, Farmers requested that St. Paul pay the costs of defending Farmers and indemnify Farmers for any potential losses resulting from the Loesche litigation. St. Paul declined Farmers' request advising Farmers that the Policy does not provide coverage

for the claims set forth in the Loesche litigation. Accordingly, Farmers filed the instant cause of action asking this Court to issue a declaratory judgment stating that St. Paul has a duty to indemnify and to pay Farmers' defense expenses. Farmers also alleges that St. Paul acted in bad faith in violation of Section 155 of the Illinois Insurance Code when St. Paul wrongfully denied coverage to Farmers. St. Paul denied that Farmers' claims are covered by the Policy and filed a counterclaim seeking a declaration from this Court that it does not have an obligation to pay defense expenses or indemnify Farmers with respect to the Loesche litigation. Additionally, St. Paul denies that it acted in bad faith.

Farmers filed a Motion for Partial Summary Judgment asking this Court to issue a declaratory judgment stating that St. Paul has a duty to pay the defense expenses and indemnify Farmers for any losses incurred in the Loesche case. Farmers does not request summary judgment on its claim that St. Paul violated Section 155 of the Illinois Insurance Code preferring to address this issue after the declaratory judgment count is decided.

St. Paul filed a cross Motion for Summary Judgment asking this Court to declare that it does not owe any duty to advance defense costs or indemnify Farmers for the Loesche litigation because these claims are not covered under the Policy. Additionally, St. Paul argues that this Court should grant summary judgment in St. Paul's favor on Farmers' Section 155 claim because it did not act in bad faith in denying Farmers' claim.

As both motions are fully briefed, this Order follows.

## STANDARD OF REVIEW

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record

or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 447 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, "[w]here a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## DISCUSSION

The two primary issues in this case are whether St. Paul has a duty to reimburse Farmers for defense expenses and whether St. Paul has a duty to indemnify Farmers for losses associated with the Loesche litigation. The Court will address each issue separately.

A.     **Duty to Reimburse for Defense Expenses**[1]

Under Illinois law, which both parties agree governs this case, "in construing the language of an insurance policy, the court's primary objective is to ascertain and give effect to the intent of the parties of the contract." *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.,* 197 Ill.2d 278 (2001). "If the words of a policy are clear and unambiguous, a court must give them their plain, ordinary and popular meaning." *Traveler's Insurance Co.,* 197 Ill.2d at 292. Accordingly, "an insurer's duty to defend, and likewise to pay legal expense, arises only from an express undertaking as stated in the policy." *See Zurich Insurance Co. v. Raymark Industries,* 118 Ill.2d 23 (ADD PINCITE) (1987). Neither party disputes that the Policy expressly provides that defense costs are "loss," which is recoverable if it is found that the Loesche litigation is covered by the Policy.

The Policy, as amended by the Employment Practices Liability Entity Coverage Endorsement, provides as follows with respect to insurance coverage for employment practices liability:

> D.  Company Employment Practices Coverage
>
> The Insurer shall pay on behalf of the Company Loss for which the Company becomes legally obligated to pay on account of any Employment Practices Claim first made against the Company during the Policy Period or, if exercised, during the Discovery Period, for an Employment Wrongful Act taking place before or during the Policy Period.

* * *

---

[1] One of St' Paul's original affirmative defenses to Farmers' claim that St. Paul has a duty to pay for the defense costs associated with the Loesche litigation is that according to the terms of the Policy, Farmers must satisfy a retention of $250,000 before St. Paul's duty to reimburse defense costs arises. As Farmers concedes this point in its Motion for Partial Summary Judgment, any decision regarding St. Paul's duty to reimburse for defense expenses only applies to its duty after the $250,000 retention has been satisfied.

4. When used in this Endorsement:

   a. **Employment Practices Claim** means:

      i. a written demand for monetary damages,
      ii. a civil proceeding commenced by the service of a complaint or similar pleading,
      iii. a criminal proceeding commended by a return of an indictment, or
      iv. a formal civil administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

      against the Company for Employment Wrongful Acts, including any appeal therefrom, if brought and maintained by or on behalf of any past, present or prospective full-time, part-time or temporary employee of the Company, or the Equal Employment Opportunity Commission or any comparable state or local governmental body.

   b. **Employment Wrongful Acts** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the Company in connection with any actual or alleged:

      * * *

      iii. violation of any federal, state or local common or statutory law concerning employment including discrimination in employment.

      * * *

(Defendant's Motion for Summary Judgment; Exhibit 1, at 30-31.)  Additionally, the Policy states that certain exclusions apply.  Specifically, the policy states:

IV. Exclusions

A. Exclusions Applicable to All Insuring Agreements
   The Insurer shall not be liable under Insuring Agreement D for Loss on account of any Employment Practices Claim made against the Company

   9. based upon, arising out of, or attributable to the Company gaining in fact any profit, remuneration or financial advantage to which the Company was not legally entitled;

6

11. for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing; provided, however, this exclusion shall not apply to any Employment Practices Claim for any actual or alleged retaliatory treatment of the claimant by the Company or Insured Persons on account of the claimant's exercise of rights pursuant to any such law, rule or regulation.

Finally, the term Loss as used in the Policy is defined as follows:

**Loss** means the amount which the Company becomes legally obligated to pay on account of each Employment Practices Claim and for all Employment Practices Claims in the Policy Period and the Discovery Period, if exercised, made against it for Employment Wrongful Acts for which coverage applies, including but not limited to damages, judgments, settlements and Defense Costs. Loss does not include (1) any amount for which the Company is absolved from payment, (2) taxes, fines or penalties imposed by law, (3) the multiple portion of any multiplied damage award or punitive or exemplary damages, (4) the cost of any non-monetary relief, including without limitation the coss to comply with any injunctive relief or to provide reasonable accommodations, or (5) matters uninsurable under the law pursuant to which this Policy is construed; provided this definition does not exclude punitive or exemplary damages incurred by the Company to the extent such damages are insurable under applicable law.

(Id. at 30.)

In Illinois, an insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage. *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.,* 215 Ill.2d 146, 154 (2005); (citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 73 (1991)). To determine if St. Paul has a duty to reimburse Farmers for defense expenses, this Court must compare the allegations in the underlying complaint to the language of

7

the policy. *Id.* "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Id.* (citing *Outboard Marine Corp. v. Liberty Mutual Ins. Co.,* 154 Ill.2d 90, 125 (1992). In addition, "if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Id.*

Farmers argues that St. Paul has a duty to pay for defense expenses because the underlying Loesche complaint alleges a wrongful employment action which is covered by the Policy. In response, St. Paul argues that it does not have a duty to pay defense expenses because even though defense expenses are included in the definition of Loss in the Policy, the Policy only provides defense costs in the event that the allegations in the underlying action are events covered by the Policy. Specifically, St. Paul argues that the Loesche litigation is not covered because (1) any alleged loss resulting from the Loesche litigation is excluded from the Policy's coverage because a loss attributable to a violation of the Illinois Minimum Wage Law is equivalent to a violation of the Fair Labor Standards Act; (2) Loesche seeks restitution or return of profits and restitution is not covered "loss" or "damages" under the Policy; (3) any alleged loss is excluded from the Policy's coverage because it is allegedly attributable to Farmers gaining profit or financial entitlement; or (4) any liability Farmers may incur for unpaid overtime is not loss from an Employment Practices Claim as defined in the Policy.

St. Paul's first argument is that the Policy does not cover the claims in the Loesche litigation because the Policy does not cover Loss resulting from a violation of the Illinois Minimum Wage Law. St. Paul refers to Exclusion #11 of the Policy, which excludes coverage for claims made under the federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq. Exclusion #11 states:

8

> The Insurer shall not be liable under Insuring Agreement D for Loss on account of any Employment Practices Claim made against the Company
>
> 11.   for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, . . ., other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing.

Farmers argues that claims arising out of the IMWL are covered by the Policy. Farmers relies on the Illinois Supreme Court case of *Gillen v. State Farm Mutual Automobile Insurance Company*, 215 Ill.2d 381 (2005), as support for its argument that Exclusion #11 does not apply in this case. Specifically, Farmers argues that the phrase "other similar provisions of any federal, state or local statutory or common law" is ambiguous and therefore, the Policy must be interpreted in favor of Farmers as the insured. Additionally, Farmers argues that even if the phrase "other similar provisions" is not ambiguous, the Illinois Minimum Wage Law and the Fair Labor Standards Act are not similar. The Court disagrees.

The facts of the *Gillen* case are distinguishable. In *Gillen*, the Illinois Supreme Court found that a set-off provision that stated that an insurance company could reduce its liability for uninsured motorist coverage by the amount paid to the insured "under any worker's compensation, disability benefits, or similar law" did not apply to medical benefits paid pursuant to the Illinois Pension Code. *Gillen,* 215 Ill.2d at 383. Specifically, the Plaintiff in *Gillen* argued that the set-off provision did not permit deductions for the payments made pursuant to the pension code and that the phrase "other similar law" was too vague to include such payments. *Id.* at 394. The Court agreed despite the fact that numerous Illinois courts had previously held that the compensation system created under the Illinois Pension Code was analogous to the Workers' Compensation Act. *Id.* at 394. Recognizing these holdings, the Illinois Supreme Court

9

found that the issue was not whether the two acts were actually analogous but rather "whether the average person, for whom the policy is written, would reasonably understand that State Farm's liability for uninsured-motorist coverage would be limited for payments made pursuant to the [Illinois Pension Code]." *Id.* at 395. The Court then found that the phrase "worker's compensation, disability benefits or similar law" was not clear, definite, and specific because the phrase would not convey "to the average, ordinary, normal, reasonable person an intention to include [the Illinois Pension Code] within the setoff clause of the policy." *Id.* Moreover, the Court noted that even if it were to conclude that the setoff could convey to the average policyholder that it would apply to payments made pursuant to the Illinois Pension Code that this simply made the phrase ambiguous and subject to competing interpretations and therefore, the Court must construe the policy in favor of the insured. *Id.* at 396.

The facts of the instant case dictate a contrary result. As the *Gillen* Court found, the issue is whether the "average person, for whom the policy is written, would reasonably understand" that the phrase "other similar provision" includes the overtime provisions of the IMWL. Unlike *Gillen* where the insured was the wife of a firefighter who was injured and subsequently died on the job, the Policy in the instant case was written for a sophisticated insurance company. As an insurance company, Farmers is not entitled to the same level of deference as an individual like the Plaintiff in *Gillen.*

Even if Farmers were an average person such as the wife in *Gillen*, a common sense review of the two situations indicates that St. Paul intended to exclude coverage for acts such as a failure to pay overtime. Unlike the situation in *Gillen* where it is not immediately clear that a workers' compensation law and the Illinois Pension Code are analogous, the same cannot be said for the Fair Labor Standards Act and the Illinois Minimum Wage Act. Even a simple look at the

10

titles of the two laws indicates that they are both meant to provide fair working conditions for employees.

Additionally, the phrase "other similar provision" in the instant case is not nearly as broad as the phrase "other similar law" used in *Gillen*. Here, the use of the phrase "provision" rather than "law" indicates that St. Paul intended to exclude claims for actions that violated provisions similar to those of the FLSA. Accordingly, Farmers repeated attempts to identify the differences between the FLSA and the IMWL are misplaced. The question is not whether the FLSA and the IMWL are similar, the question is whether the overtime provisions in the FLSA and the IMWL are similar. The FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The IMWL states:

> Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.

820 ILCS 105/4a(1). The two provisions are virtually identical with respect to the fact that employers must pay employees such as Loesche overtime when they are required to work in excess of forty hours per week. Therefore, despite the holding in *Gillen*, the wording of these provisions, coupled with the fact that Farmers is a knowledgeable insurance company who is aware of the pitfalls associated with agreeing to a policy that includes language such as "other similar provisions," compels the Court to find that any Loss associated with the Loesche litigation is not covered by the Policy.

As the Court finds that any Loss associated with the Loesche litigation is not covered by the Policy, it is not necessary for the Court to address St. Paul's other arguments. St. Paul is not required to reimburse Farmers for defense costs resulting from the Loesche litigation or to indemnify Farmers for any losses resulting from that case and St. Paul is entitled to summary judgment on those claims. Additionally, St. Paul is entitled to summary judgment on Farmers claim that St. Paul violated Section 155 of the Illinois Insurance Code because St. Paul did not deny Farmers' claim in bad faith.

## CONCLUSION

For the reasons set forth above, St. Paul's Motion for Summary Judgment [#12] is GRANTED and Farmers' Motion for Partial Summary Judgment [#13] is DENIED.

ENTERED this 19th day of June, 2006.

        s/Michael M. Mihm
        Michael M. Mihm
        United States District Judge